IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                    *
NORTH AMERICAN SPECIALTY
INSURANCE COMPANY, As               *
Subrogee of El Capitan, LLC
t/a Crystal Place Hotel,            *

     Plaintiffs,                    *
v.                                       CIVIL NO.: WDQ-05-CV-0176
                                    *
GILLIS GILKERSON, INC.
                                    *
     Defendants.
                                    *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION AND ORDER

North American Specialty Insurance Company, ("NAS"), as subrogee for El Capitan, LLC t/a Crystal Place Hotel, has sued Gillis Gilkerson, Inc. ("Defendant") for negligence and breach of contract.  Pending is Gilkerson's motion for summary judgment. For the following reasons the motion will be granted.


I.  Background

In February 2001, Defendant entered into a contract (the "Contract")[1] with El Capitan, LLC to build the Crystal Place Hotel in Ocean City, Maryland.  Complaint, ¶ 7.  On February 13, 2002, while the hotel was under construction, it was extensively

_____

[1] The Contract was a standard form construction contract written by the American Institute of Architects.  Def.'s Mot. For Summary Judgment, Exhibit 2.

1

damaged by fire.  Complaint, ¶ 11.  The fire was caused by a kerosene space heater, installed and maintained by Defendant, that ignited cardboard boxes piled in front of the heater by employees of Donaway Furniture, a subcontractor of El Capitan. *Id.*

NAS, as the insurer of El Capitan, brought suit as subrogee alleging: 1) that Defendant's negligent installation and maintenance of the space heaters caused the fire and 2) Defendant breached its contractual duty to act with due care and in compliance with industry standards.  NAS seeks reimbursement for the $97,684.36 paid to El Capitan for the fire.  Defendant has moved for summary judgment under Federal Rule of Civil Procedure 56(c).

II.  Analysis

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial." *Id.* at 249. Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

Defendant has moved for summary judgment, arguing that NAS's suit is barred by the "Waiver of Subrogation" provision of the Contract, ¶ 11.4.7. NAS argues in response that: 1) paragraphs 3.3.2 and 4.3.8 demonstrate the intent of the parties to allow negligence claims; and 2) paragraph 11.4.7 is void as a matter of public policy.


A.  Interpretation of the Contract

Under Maryland law, the interpretation of a contract is a question of law. *Towson Univ. v. Conte*, 384 Md. 68,78 (Md. 2004); *Atlantic Contracting & Material Company, Inc. v. Ulico Casualty Company,* 380 Md. 285 (Md. 2004); *Sy-Lene v. Starwood,*

3

376 Md. 157, 163 (Md. 2003); *Calomiris v. Woods,* 353 Md. 425 (Md. 1999).  Maryland courts follow the objective law of contract interpretation.  *Id.*  Under the objective law, the court must give legal effect to the clear and unambiguous terms of a contract.  *Sy-Lene of Washington v. Starwood Urban Retail II, LLC,* 376 Md. 157, 167 (Md. 2003); *Calomiris v. Woods,* 353 Md. 425, 435 (Md. 1999).  The "clear and unambiguous language of an agreement will not give way to what the parties thought that the agreement meant or intended it to mean." *Calomiris,* 353 Md. 436.  The "true test of what is meant is...what a reasonable person in the position of the parties would have thought it meant." *Id.*

Whether the language of a contract is clear and unambiguous is also a question of law for the court.  *Calomiris,* 353 Md. at 434; *Eaglehead,* 170 F.Supp.2d 552 (D.Md. 2001).  A written contract is ambiguous if, "when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris,* 353 Md. at 436.

Defendant argues that ¶ 11.4.7, which requires the parties to waive their rights to bring action against each other for property damage caused by their employees and subcontractors *to the extent covered by property insurance*,[2] bars NAS's suit.  NAS

---

[2] Paragraph 11.4.7 of the Contract, provides that:
> The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other...for damages caused by fire or other causes of

contends that ¶¶ 3.3.2—which provides that the Contractor is
liable for the acts and omissions of his employees and
subcontractors[3]—and ¶ 4.3.8—which requires that the parties
provide notice of any damages they suffer within 21 days of the
injury[4]—demonstrate that the parties intended to ignore ¶ 11.4.7
and allow claims for negligence.

The Contract is a standard form contract supplied by El
Capitan and unchanged by either party.  NAS has offered no

---

loss to the extent covered by property insurance
obtained pursuant to this Paragraph 11.4 or other
property insurance applicable to the Work....The
policies shall provide such waivers of subrogation by
endorsement or otherwise.  A waiver of subrogation
shall be effective as to a person or entity even though
that person or entity would otherwise have a duty of
indemnification, contractual or otherwise, did not pay
the insurance premium directly or indirectly, and
whether or not the person or entity had an insurable
interest in the property damaged.

[3] Paragraph 3.3.2 provides that:
The Contractor shall be responsible to the Owner for
acts and omissions of the Contractor's employees,
Subcontractors and their agents and employees, and
other persons or entities performing portions of the
Work for or on behalf of the Contractor or any of its
Subcontractors.

[4] Paragraph 4.3.8 provides that:
If either party to the contract suffers injury or
damage to person or property because of an act or
omission of the other party, or of others for whose
acts such party is legally responsible, written notice
of such injury or damage, whether or not insured, shall
be given to the other party within a reasonable amount
of time not exceeding 21 days after discovery.  The
notice shall provide sufficient detail to enable the
other party to investigate the matter.

evidence, other than the terms of the contract, that the parties intended to ignore ¶ 11.4.7.

In interpreting the terms of the Contract, it is a fundamental rule of contract construction that the entire contract must be given meaning and effect. *JMP Associates v. St. Paul Fire and Marine Ins. Co.*, 345 Md. 630, 636 (Md. 1997). An interpretation which gives reasonable meaning to all of a contract's provisions is "preferred to one which leaves a portion of the writing useless or inexplicable." 345 Md. 636.

Although NAS contends that ¶¶ 3.3.2, 4.3.8 and 11.4.7 are mutually exclusive, ¶ 11.4.7 is reasonably interpreted to impose liability damage that exceeds the insurance coverage. This construction provides effect to ¶ 11.4.7 rather than reduces it to mere surplusage.


B.  Public Policy

NAS argues that ¶ 11.4.7 is void as contrary to public policy; Defendant disagrees.

Exculpatory clauses are generally valid as a matter of public policy. *Wolf v. Ford,* 644 A.2d 522, 531-533 (Md. 1994); *see also Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.,* 983 F.Supp. 640 (D.Md. 1997). However, Maryland courts will not enforce contract provisions that allow: 1) a party to excuse its liability for intentional harms or

reckless, wanton or gross negligence; 2) a party with grossly unequal bargaining power to impose a waiver of liability; or 3) an exculpatory agreement in a transaction affecting the public interest.  *Id.*  Maryland courts are hesitant to strike down voluntary bargains on public policy grounds.  *Id.*

Contrary to NAS's argument, the subrogation waiver is not "patently offensive."  Therefore, ¶11.4.7 is not void as contrary to public policy.


III.  Conclusion

The "Waiver of Subrogation" bars NAS's claim.  Accordingly, Defendant's motion for summary judgment will be granted.


<u>September 27, 2005</u>                    <u>          /s/          </u>
Date                                William D. Quarles, Jr.
                                    United States District Judge

7